9274.   SMITH *v.* WESTERN & ATLANTIC RAILROAD CO.

1. (*a*) Ordinarily the only duty that a railway company owes to a tres-
   passer upon or about its property is not to injure him wantonly or
   wilfully after his presence has been discovered, but failure to exercise
   ordinary care to prevent the injury to a trespasser after his presence
   has become known is usually so much akin to wilfullness or wanton-
   ness as to create liability on the part of the company, where the failure
   to exercise that degree of care would render it liable.
   (*b*) Generally the servants of a railway company are not bound to antici-
   pate the presence of a trespasser upon or about its tracks, and the duty
   of exercising such care and diligence does not in such case arise until
   the presence of the trespasser becomes known.
2. Under the facts of this case, the court did not err in directing a verdict
   in favor of defendant.

DECIDED JUNE 12, 1918.

Action for damages; from Whitfield superior court—Judge Tar-
ver.   July 27, 1917.

William and Lou Smith originally instituted an action against
the Southern Railway Company and the Western & Atlantic Rail-
road Company for the homicide of their minor son, alleged to be
eighteen years of age (in the present case alleged to be seventeen
years of age), who had never married, and upon whose estate there
was no administration.   The action was brought under the Civil
Code (1910), § 2782 et seq.   The deceased was employed by the
Southern Railway Company.   The Western & Atlantic Railroad
Company was made a joint defendant upon the theory that
its negligence concurred in causing the decedent's death.   The
defendants filed demurrers, which were overruled, and the case
was taken to the Supreme Court, and it was decided that, the
case having been brought under the State "employer's liability
act," the action was demurrable at the instance of each of the de-
fendants, for misjoinder of parties defendant, and at the instance
of the Western & Atlantic Railroad Company for misjoinder of par-
ties plaintiff.   It was also held in that case that as to the Western
& Atlantic Railroad Company the facts alleged did not make out a
case of negligence sufficient to support an action, and a general
demurrer should have been sustained.   The allegations of the peti-
tion appear in that decision.   See *Western & Atlantic R. Co.* v.
*Smith,* 144 *Ga.* 737 (87 S. E. 1082).   The plaintiffs then dis-
missed the Western & Atlantic Railroad Company from that suit,
and, Lou Smith, one of the plaintiffs, having died, William Smith

was appointed her administrator, and by amendment was made a party as such, and the case then proceeded to trial against the Southern Railway Company. The verdict was for the defendant, and was sustained by this court in the case of *Smith* v. *Southern Railway Co.,* 20 *Ga. App.* 609 (93 S. E. 166). William Smith then instituted the present suit against the Western & Atlantic Railroad Company to recover the value of his deceased minor son's services. The allegations of negligence against the defendant in the petition in this case are substantially the same as those made against it in the petition filed in the case against both this defendant and the Southern Railway Company, except that the following additional allegations were made: "Petitioner further shows that said defendant Western & Atlantic R. Co. engineer and fireman [were?] operating said train on a straight track where petitioner's son could easily have been seen by the engineer and fireman upon said engine for the distance of 300 yards, and that said employees did see your petitioner's son and could have in the exercise of ordinary care have stopped said train and so checked the same as to prevent the killing of your petitioner's son." "Said defendant was further negligent in that its engineer and fireman operating said train and engine that killed petitioner's son could see that a northbound freight was passing and could see petitioner's said son and could see the danger and peril that he was in at the time and could in the exercise of ordinary care and diligence have blown the whistle and checked said train and by said warning and checking could have saved the life of petitioner's said son Walter Smith, but while seeing his position of peril and seeing and knowing that he was not looking towards said engine, negligently failed and refused to give any warning or check the train or do anything to prevent the death of said Walter Smith, petitioner's said minor son."

Upon the trial of the case, after the plaintiff and the defendant had introduced their evidence, the court directed a verdict for the defendant; to which the plaintiff excepted.

*W. E. Mann, W. C. Martin,* for plaintiff.

*Tye, Peeples & Tye, Maddox, McCamy & Shumate,* for defendant.

JENKINS, J. (After stating the foregoing facts.) Under the decision rendered by the Supreme Court when this case was before

it (*Western & Atlantic R. Co.* v. *Smith,* supra), the question whether the defendant was charged with the duty of anticipating the presence of the deceased upon its tracks need not be considered, since the allegations of the petition then under review, which are set out in that opinion, and which sought to charge the defendant with that duty, are substantially the same as those of the petition in the instant case, and the Supreme Court there held that the facts alleged did not make out a case of negligence sufficient to support an action, and a general demurrer thereto should have been sustained. Under the allegations in the present petition, and the evidence adduced upon the trial of the case, the deceased was a trespasser upon the defendant's tracks at the time he was killed. As has been held both by the Supreme Court and by this court, the only duty which a railway company ordinarily owes to a trespasser upon or about its property is not to injure him wantonly or wilfully after his presence has been discovered, but failure to exercise ordinary care to prevent injury to a trespasser after his presence has become known is usually so much akin to wilfullness or wantonness as to create liability on the part of the company, where the failure to exercise that degree of care would render it liable. As a general rule, however, the servants of a railway company are not bound to anticipate the presence of a trespasser upon or about its tracks, and the duty of exercising such care and diligence does not in such a case arise until the presence of the trespasser becomes known. See *Pope* v. *Seaboard Air-Line Ry.,* 21 *Ga. App.* 251 (94 S. E. 311), and cases cited. Therefore, the only question presented for our consideration in this case is whether under the evidence the defendant's servants wilfully and wantonly killed the plaintiff's son, or failed to exercise ordinary care and diligence to prevent the injury after his presence upon defendant's tracks became known to the defendant's servants.

The plaintiff introduced as its only witness the brother of the deceased, who testified that the deceased was killed by the engine of the defendant company. He further testified that at the time his brother was killed he could not see him, by reason of the passing of a freight-train on the Southern Railway Company's track between him and his brother. Where an action is brought for the homicide of a trespasser, shown to have been occasioned by the operation of defendant's cars, the presumption of negligence does

not arise against the defendant, unless it appears that at the time of the injury there was due from the company to the person injured a degree of diligence to prevent such injury.   In the evidence there is nothing that could raise any such presumption against the defendant, while on the other hand the evidence of the engineer in charge of defendant's locomotive, and the testimony of the conductor of the Southern freight-train passing this point at the time of the injury, both exonerate the defendant from any act of negligence, and this testimony is not in any way disputed.   Regardless of how far the servants in charge of defendant's train might have seen the deceased before striking him, there was, under the evidence, no duty resting upon them to anticipate his presence upon the track, and thus the duty of exercising ordinary care did not arise until his presence actually became known to those upon the engine.   The engineer testified that when he first saw the deceased, the latter was within about forty feet of him; that the deceased was looking at the passing Southern freight-train, and was standing on the end of a cross-tie; "I commenced blowing my whistle at him, and he never did pay any attention to it.   Then I slapped my brake on in emergency, but I was too close to him. . . I could not have checked the speed of that train sooner than I did.   I couldn't have done anything else except blow the whistle." The conductor on the Southern train testified as follows: "The W. & A. man blew at the boy.   He blowed as quick as he saw him, looked like.   The W. & A. man come around that curve off of the 'S,' and when he got to where he could see the negro he was not more than I should think 100 yards from him at the furtherest, and he blowed at the negro, but the negro never did seem to notice him. . . I don't think the W. & A. train could have stopped after he saw him."   No one was introduced to contradict these witnesses, and while the brother of the deceased did testify that he "imagined" that any one on an engine approaching the point at which the deceased was killed *could have* seen him for three or four hundred yards, still, under the rule of law which has been stated, such a supposition fails to support the charge of negligence in this case.   We do not think the jury would have been authorized under the evidence to return a verdict in the plaintiff's favor. The court therefore did not err in directing a verdict in favor of the defendant.

*Judgment affirmed.   Wade, C. J., and Luke, J., concur.*